UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Guy Milingout,                                                 Civil No. 06-3912 (DWF/RLE)

               Plaintiff,

v.                                                               **MEMORANDUM**
                                                                  **OPINION AND ORDER**

Attorney General Alberto R. Gonzales
and District Director Denise Frazier,
Department of Homeland Security,

               Defendants.

_____

Barton Carl Winter, Esq., Winter Law Office, counsel for Plaintiff.

Friedrich A. P. Siekert, Assistant United States Attorney, United States Attorney's Office, counsel for Defendants.

_____

## INTRODUCTION

This matter came before the Court on August 8, 2007, pursuant to a Motion for Temporary Restraining Order ("TRO") brought by Plaintiff Guy Milingout. For the reasons set forth below, Milingout's Motion for a TRO is denied.

## BACKGROUND

Milingout's original Complaint, filed on October 2, 2006, consists of a mandamus and declaratory judgment action seeking to compel the above-named Defendants (collectively, the "Government") to adjudicate an Asylee Relative Petition of which

Milingout, a citizen of Gabon,[1] is the subject. (Complaint (Doc. No. 1) at ¶ 1.) Jeannisse Sole filed the Asylee Relative Petition on behalf of her purported husband, Milingout.[2]

In a letter dated February 1, 2007, Defendant Denise Frazier sent Jeannisse Sole a Notice of Intent to Deny the Asylee Relative Petition. (Pl's Mo. for a TRO, App. at Ex. 2.) That letter included the following review of the record:

> On March 21, 2000, Mr. Milingout was admitted to the United States as a B-2, visitor. On January 10, 2001, Mr. Milingout filed Form I-589, Application for Asylum. On the I-589, he claimed to be married, listing his wife as Mariette Nze, date of birth July 27, 1972, born in Gabon. He claimed the marriage took place in Libreville, Gabon, on July 28, 1998.
>
> On February 21, 2001, Mr. Milingout was interviewed regarding his asylum application and testified that he was married to Mariette Nze, date of birth July 27, 1972, and was married on July 28, 1998, in Libreville, Gabon.
>
> On February 5, 2002, Mr. Milingout's application for asylum was denied by the Immigration Judge.
>
> On June 14, 2005, you and Mr. Milingout were interviewed regarding the Asylee Relative Petition[] you filed in his behalf on April 25, 2003. At the interview you testified that your name is Jeannisse Sole, date of birth July 27, 1976, born in Congo. When asked if you had ever used any other names, you testified that when you entered the United States you used a

---

[1] According to the Government, Milingout entered the United States as a visitor on March 21, 2000, with authorization to remain until September 20, 2000. He has been in the United States since then without authorization. The U.S. Citizen and Immigration Services ("USCIS") placed Milingout in removal proceedings on March 27, 2001. Milingout then applied for asylum. On February 5, 2002, an Immigration Judge denied Milingout's application for asylum and ordered Milingout removed. Milingout appealed the denial to the Board of Immigration Appeals ("BIA"). The BIA dismissed his appeal on the merits on November 3, 2003. As a result, Milingout was subject to a final order of removal.

[2] According to representations by Milingout's counsel, Sole recently filed for divorce against Milingout.

passport in the name of Mariette Nze.  You testified that you did not know Mariette Nze, but bought the passport from a third person.

You testified that you married Guy Milingout on September 11, 2002, in Arlington, Virginia, and this is your only marriage.  You also testified that Mr. Milingout had one prior marriage to Mariette Nze, and that it was a coincidence that Mr. Milingout's former wife had the same name as the name listed on the passport you used to enter the United States.

In support of the petition you submitted a death certificate for Mariette Nze.  The submitted death certificate contained the following information:

Civil Status Registration Center of Yaounde, Republic of Cameron
Death Certificate No. 0137
Name of deceased:  Mms Milingout born as Nze Mariette
Died at Yaounde-Cameroon on May 31, 2002
Date of birth:  July 27, 1972
Place of birth:  Gabon
Drawn up on June 5, 2002
Signature of Civil Status Registrar:  Gakouto Ntimi Jean

On January 22, 2007, the American Embassy Yaounde, Cameroon responded to the Service's request for an investigation as to the validity of the death certificate for Mariette Nze as listed above.  The American Embassy investigation revealed that following:

- Death Certificate Number 0137 was not found in the registers of the council.
- The numbering is not the format that is used in the council.
- Mr. Gakoutou Ntima Jean has never worked in the council of Yaounde.  No one has heard of the name before.
- The Death Certificate is Fraudulent.

(*Id*. (spelling disparities in original).)

Because the Government's investigation revealed that Nze's death certificate was fraudulent, Sole and Milingout had not established that they were free to enter into the marriage that formed the basis of the Asylee Relative

3

Petition. (*Id.*) Because the Government determined the marriage invalid, it denied Sole's Asylee Relative Petition. (*Id.*) The letter also stated:

> you are hereby given thirty (30) days from the date of this letter to offer written evidence in rebuttal. Any explanation, rebuttal, or evidence presented by you will be included in the proceeding. If no explanation, rebuttal or evidence is received within the time given, a decision will be made based on the record.

(*Id.*)

The USCIS granted two extensions of the time to submit such evidence in exchange for Milingout's agreement to dismiss this action as moot. (Mem. of Law in Opp'n to Mot. to Amend Compl. at 2, 6-7.)[3] Yet, the Government asserts that Milingout never submitted any evidence in opposition to the impending denial. (*Id.*) Ultimately, the USCIS denied the Asylee Relative Petition on June 8, 2007. (Pl's Mo. for a TRO, App. at Ex. 4.) Milingout appealed that denial to the BIA on July 6, 2007.

In the meantime, on June 1, 2007, Milingout was terminated from the Intensive Supervision Appearance Program ("ISAP") and he was taken into custody pending removal. The Government emphasizes that Milingout was not ordered removed based on the denial of Sole's Asylee Relative Petition. Rather, Milingout was ordered removed based on the initial removal proceedings brought against him and the denial of Milingout's own asylum petition. Milingout is currently in custody awaiting travel documents for removal.

---

[3]   At oral argument on this matter, Plaintiff's counsel did not dispute that an agreement was made, but, rather, stated that the agreement was not fair to Plaintiff.

4

On July 13, 2007, Milingout filed the Motion to Amend, seeking to amend his complaint to add a new action challenging the USCIS's overseas investigation into Mariette Nze's death certificate that Milingout and Sole submitted in support of the Asylee Relative Petition. Milingout did not include a copy of a proposed amended complaint with his Motion to Amend; however, his counsel provided a proposed amended complaint to the Court at the August 8, 2007, oral argument on this matter (the "August 8, 2007 Complaint").

The August 8, 2007 Complaint adds Scott Baniecke, Assistant Field Director, Customs and Immigration Enforcement, as a Defendant. The August 8, 2007 Complaint also states that the overseas investigation into the Mariette Nze's death certificate was unconstitutional and violated Milingout's right to due process. (August 8, 2007 Complaint at ¶ 1.) Finally, the August 8, 2007 Complaint states that after Mariette Nze's first death certificate was determined invalid, Milingout received a second death certificate from Cameroon that included a different document number and the signature of a different civil status registrar who validated the document. (*Id*. at 23; *see also* Pl's Mo. for a TRO, App. at Ex. 6.) According to the August 8, 2007 Complaint, "[t]hey explained that they had made a mistake." [4] (August 8, 2007 Complaint at ¶ 23.)

In conjunction with the Motion to Amend, Milingout filed the Motion for a TRO on July 13, 2007. In that motion, he asks the Court to restrain the Department of Homeland Security, Immigration and Customs Enforcement from

---

[4]  It is unclear to the Court who "they" are.

deporting Plaintiff prior to the adjudication of his request. Specifically, Milingout challenges the overseas investigation into Mariette Nze's death certificate on due process grounds.

The Government asserts that Milingout's Motion for a TRO is deficient on a number of grounds. First, the Government contends that the original Complaint is moot because the USCIS's denial of Sole's asylee relative has been adjudicated. Second, the Government asserts that the Court lacks subject matter jurisdiction to enjoin Milingout's removal. Specifically, the Government contends that Milingout's removal, which is based on the asylum petition brought in Milingout's own right, is final and not subject to any further judicial review.

## DISCUSSION

### I.   Standard of Review

A temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of the factors by itself is determinative; rather, in each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *Taylor Corp. v. Four Seasons Greetings, LLC,* 315 F.3d 1039, 1041 (8th Cir. 2003); *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the injunctive relief bears the "complete burden" of proving all of the factors listed above. *Gelco Corp.*

*v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see also Watkins, Inc. v. Le*wis, 346 F.3d 841, 844 (8th Cir. 2003).

     A.     **Likelihood of Success on the Merits**

The first *Dataphase* factor requires that the movant establish a substantial probability of success on the merits of its claim. *See Dataphase*, 640 F.2d at 114.

First, it is without question that to the extent that Milingout's TRO is based on the original Complaint, the matter is moot. The original Complaint was a mandamus action seeking to compel the Defendants to adjudicate Jeannisse Sole's Asylee Relative Petition. That matter was adjudicated when the USCIS issued a denial of the petition on June 8, 2007. This mooted the original Complaint.

Second, the Court finds no likelihood of success on the merits of the August 8, 2007 Complaint, even if this complaint was properly before the Court. To the extent that Milingout attempts to pin his removal on the denial of Sole's Asylee Relative Petition, the Court lacks jurisdiction over Milingout's claim. 8 U.S.C. § 1252 states as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review –
>     . . .
>
>     (ii)    any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

7

8 U.S.C. § 1252(a)(2)(B)(ii) (2006). The authority to grant or deny asylee relative status arises from 8 U.S.C. § 1158(b)(3)(A), a provision that is "specified under the subchapter" referred to in 8 U.S.C. § 1252(a)(2)(B)(ii) and is discretionary. Specifically, 8 U.S.C. § 1158(b)(3)(A) states: "A spouse or child (as defined in section 1101(b)(1) (A), (B), (C), (D), or (E) of this title) of an alien who is granted asylum under this subsection *may*, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien." (Emphasis added.) Under this language, the decision to grant asylee relative status is discretionary, precluding this Court's jurisdiction over the denial of such a petition.[5]

In addition, the Court finds that to the extent Milingout raises due process concerns regarding the overseas investigation, Milingout's claim has no likelihood of success on the merits. In order to establish a due process violation, a petitioner must establish a liberty interest, a fundamental procedural error, and that the error resulted in actual prejudice to the petitioner. *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003). Actual prejudice occurs "where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." *Id*. at 512-13 (quoting *United States v. Torres-Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995).) Here, Milingout cannot establish a due process violation.

First, Milingout cannot establish a liberty interest in a favorable USCIS decision on Sole's Asylee Relative Petition when such a decision is purely discretionary, as noted

---

[5] In addition, it appears that Milingout has failed to exhaust his administrative remedies in that he has appealed the denial of the asylee-relative claim to the BIA, and undisputedly, such appeal has not been adjudicated.

8

above.  Second, Milingout has not identified a fundamental procedural error.  Specifically, Milingout attempts to challenge the propriety of an investigative search into a death certificate that he and Sole submitted in support of the Asylee Relative Petition, a document that admittedly was wrong, if not fraudulent, as evidenced by the August 8, 2007 Complaint.  Contrary to Milingout's contentions at oral argument that the Government was acting "clandestinely" to investigate the death certificate, Milingout has provided nothing to the Court to demonstrate that the Government did not have a right to investigate whether the marriage between Sole and Milingout was bona fide.  Milingout's concession that Mariette Nze's first death certificate was invalid further supports the notion that the Government should, indeed, investigate the authenticity of such documents.  Nothing before the Court suggests a fundamental procedural error.

Moreover, as noted above, Milingout has yet to exhaust his administrative remedies regarding the denial of the Asylee Relative Petition.  Milingout's appeal of the denial to the BIA is pending.  It is unclear if Milingout has appealed the denial of his removal to the Eighth Circuit Court of Appeals.

Finally, Milingout has not demonstrated actual prejudice.  It is difficult to understand how Milingout could establish actual prejudice when the document that was purportedly derived from an improper investigation was, undisputedly, determined to be wrong.

### B. Irreparable Harm

The movant must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages.  *See*

*Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). Milingout has not established that he will suffer irreparable harm if he is removed. Although the Court acknowledges that Milingout's claims likely will be more difficult to adjudicate from overseas, such difficulties are speculative. *See Ben-Yonatan v. Concordia College Corp.*, 863 F. Supp. 983, 986 (D. Minn. 1994) ("Possible or speculative harm is not enough."). Moreover, to the extent that Milingout raises any issues of irreparable harm related to his fear of returning to Gabon, these claims (e.g., that he fears retaliation at the hands of the Gabon government), in essence, seek an end-run around the adverse result of Milingout's asylum petition that he brought on his own behalf. But the Court is not adjudicating the merits of Milingout's petition for asylum or the removal proceedings. Rather, the Court is deciding whether Milingout was afforded due process as a result of the overseas investigation into his wife's Asylee Relative Petition. Regardless, the Court finds that on the record before the Court, no irreparable harm will occur to Milingout if he is removed from the United States.

    **C.**    **Balance of Harms and Public Interest**

Because the Court finds that Milingout has not demonstrated irreparable harm or likelihood of success on the merits, the Court need not address the two remaining *Dataphase* factors.

For the reasons stated, **IT IS HEREBY ORDERED** that:

      1.      Plaintiff Guy Milingout's Motion for Temporary Restraining Order (Doc. No. 18) is **DENIED.**

Dated:  August 9, 2007                    s/Donovan W. Frank
                                                DONOVAN W. FRANK
                                                Judge of United States District Court